# Supreme Court of the Navajo Nation

---

**Martha Descheenie, Plaintiff-Appellant,**
v.
**Delbert Mariano, Defendant-Appellee.**
**Decided August 4, 1988**

---

## OPINION

Before TSO, Chief Justice, BLUEHOUSE and AUSTIN, Associate Justices.

Gary E. LaRance, Esq., Tuba City, Arizona, for the Appellant; Larry Kee Yazzie, Esq., Tuba City, Arizona, for the Appellee.

Opinion delivered by BLUEHOUSE, Associate Justice.

In this paternity action, Martha Descheenie appeals as insufficient a child support award of $100.00 per month ordered by the Tuba City District Court for her daughter Ranee. Descheenie also asserts on appeal that the Tuba City District Court abused its discretion by not granting her request for past child support covering the period from Ranee's birth to the date of this suit.

## I

Martha Descheenie is the natural mother of Ranee Marie Mariano, who was born out of wedlock on April 30, 1984. Delbert Mariano admits that he is Ranee's father. Both parents are enrolled resident members of the Navajo Nation. Descheenie and Mariano are both employed with the Peabody Coal Company in Kayenta, Navajo Nation (Arizona). Mariano's salary is $1,907.84 per month net and Descheenie's salary is approximately $2,300.00 per month net. Since Ranee was born, Descheenie has given birth to another daughter, Heather. Descheenie receives $400.00 each month from Heather's father for Heather's support. Delbert Mariano has another biological child born of a marriage with a Katherine Mariano. Mariano pays his ex-wife a court ordered amount of $225.00 each month to support this son. Mariano currently lives with a third woman who has two children. Mariano introduced no evidence regarding this woman's income, if any, or who supports her children.

Descheenie's testimony at trial regarding past care and support expenses for Ranee was conflicting, but the amount is somewhere between $13,000.00 and $16,360.00. Descheenie estimated at trial that Ranee's current monthly expenses total $450.00, but when she itemized the expenses, the total was $507.00. The

monthly expenses include clothing, child care, toiletries, toys, medical expenses, and groceries. As the second child, Heather uses many of the items listed as expenses for Ranee, such as clothing, toys, and baby equipment. The monthly day care cost has remained the same for both girls as it was for Ranee alone.

Descheenie filed a Petition for Paternity in the Tuba City District Court on July 19, 1986. On April 2, 1987, the district court issued the Final Decree of Paternity. The decree stated that Delbert Mariano is the natural father of Ranee, and that the parents are awarded joint custody. The court set up a visitation schedule, and ordered Mariano to pay $100.00 per month for Ranee's support. The district court did not address the issue of past child support.

Descheenie filed a notice of appeal on May 4, 1987. This Court granted the appeal on July 2, 1987, on the following issues: (1) Whether the district court abused its discretion in awarding $100.00 a month in child support in this paternity action; and (2) Whether past child support should be awarded in a paternity action. On the first issue, we reverse the district court's child support award and remand for a new trial to determine a new child support amount in conformity with the guidelines set out below. On the second issue, we hold that a Navajo district court shall not award past child support in a paternity action.

## II

The Navajo Tribal Code does not contain provisions on paternity actions or on how to determine child support amounts. We realize that we are treading on legislative ground by setting up these guidelines. However, in the absence of Tribal Council action, we must do our best to fairly resolve the disputes that come before us, and establish a uniform pattern for resolving those disputes. This is not the first time we have set guidelines when the Tribal Council has failed to legislate. *See Sells v. Sells*, 5 Nav. R. 104 (1986). The dominant principle in suits involving children is always the best interests of the child. *Barber v. Barber*, 5 Nav. R. 9, 12 (1984). The court must always act as the parent of the child and it must act in the best interests of the child. *Id.* at 12. This rule imposes upon the district courts a duty to ensure that child support amounts take precedence over other bills that the obligated parent must pay. The record shows that the district court gave Mariano's other bills priority over the amount to be paid as Ranee's support. A court that gives priority to an obligated parent's other bills will naturally reduce the amount which should be paid to the child as support. We find from the record that that is exactly what occurred in this case. As a result, we find that the district court abused its discretion by failure to abide by the best interests of the child rule.

We have said that Navajo custom obligates each Navajo parent to provide for the support of his or her child. *Notah v. Francis*, 5 Nav. R. 147, 149 (1987) . Navajo custom also requires each parent to contribute his or her reasonable share toward the child's support, according to each parent's income and resources. *See*

*Tom v. Tom*, 4 Nav. R. 12, 13 (1983). The support award can be consistent with the lifestyle the child is accustomed to. However, the awarding court must not order a parent to pay so much child support that the parent has insufficient money to live on. *Joe v. Joe*, 1 Nav. R. 320, 323 (1978). A court must make child support awards such that each parent bears an appropriate amount of responsibility for the child, while keeping in mind that for the child to prosper, the parents also must prosper.

Because the mother has been granted custody of the child in most of our cases, the language in our case law is directed toward the father, and many fathers feel that because they are the ones turning money over to the mother, they, as the fathers, are the only ones paying to support the child. This misplaced belief has resulted in many custody disputes by parents who want custody of the child only in order to avoid making monthly payments of support to the other parent. Through the application of a formula that we have set forth below, and by not allowing the custodial parent any "credit" for having custody of the child, the falsehood that the custodial parent makes no financial contribution to the child's support will no longer be perpetuated.

The formula allows the calculation for each parent, whether custodial or non-custodial, to remain essentially the same. Begin with each parent's monthly net income. Net income is the amount of income left after all mandatory taxes and social security (FICA) are subtracted. If a parent receives child support for another child, that is not added into the net income. From the net income, subtract as adjustments only those amounts for court ordered support of other children, alimony, special medical or educational needs of a child, and expenses for the basic necessities of the parent, such as food and shelter. In an appropriate case supported by competent evidence, other adjustments may be allowed within the discretion of the district court. The custodial parent gets no adjustment for having custody of the child.

Once those adjustments have been made for each parent, the amount remaining, the adjusted net income, is added to the adjusted net income of the other parent. The result is the combined adjusted net income of both parents. To determine the percentage of support each parent has a duty to pay, divide that parent's adjusted net income by the combined adjusted net income figure. For example, mother's net income per month is $2,200.00. After adjustments, her income is $500.00. Father's net income per month is $2,000.00. After adjustments, his income is $400.00. The combined adjusted net income is $900.00. The percentage of support the mother must pay is 500 divided by 900, or 56%, and the percentage the father must pay is 400 divided by 900, or 44%.

The amount of child support a child receives each month is not determined by how much the parents say they can afford. To determine the appropriate support amount, the district court must consider the reasonable needs of the child. These may include food, clothing, health needs, child care, and educational expenses, such as paper, writing instruments, et cetera. The monthly support amount the

district court arrives at is then multiplied by the percentage each parent is responsible for in order to calculate the dollar amount each parent pays each month to support the child. If the district court determines that the reasonable needs of a child will be met with $400.00 per month, the mother in the example given above would be responsible for 56% of $400.00, or $224.00 per month. The father in the example given above would be responsible for 44% of $400.00, or $176.00 per month. A parent may not substitute in-kind contributions for support money except by court order or agreement of the parties. *Notah v. Francis*, 5 Nav. R. 147, 150 (1987). Also, because children generally become more expensive as they grow older, the custodial parent may go back to district court in the future to have the court recalculate the support amount.

In establishing this formula, we are mindful of the vast spectrum of social and economic groups existing within the Navajo Nation. The parent who lives in a hogan and raises livestock cannot contribute to a child's support in the same manner as a parent who earns $22,000.00 per year at a coal mine. The formula we establish today is to be used in determining child support for a child whose parents both earn incomes outside the home. This formula is intended to place the stone foundation for the judges in the district courts to be guided by and to build upon. To a great extent, what is used to complete the structure is in the discretion of the district court.

## III

We now address the issue of whether a district court shall award past child support in a paternity action. While we recognize a parent's obligation to support his or her children, and we realize that the state of Arizona allows awards for past support, the Navajo Nation has a unique set of circumstances which make this type of relief inappropriate and unenforceable.

First, unlike the state of Arizona, the Navajo Nation has no statute which authorizes an award for past child support in a paternity action. Even though Mariano knew that Ranee was his child, and he was aware that Descheenie wanted him to pay support, Mariano had no fair warning that he would be legally accountable for years past.

If a statute authorizing past support existed then Mariano could be held to have been impliedly warned of his duty to pay such past support. Due process under the Navajo Nation Bill of Rights, 1 N.T.C. § 3 (1986 amend.), and the Indian Civil Rights Act, 25 U.S.C. § 1302(8) (1968), dictates that Mariano not be ordered to make up for something which he had no legal duty to do originally.

Second, determining how much the child should receive for past support would plunge the district court into a quagmire of speculation. Very few, if any, parents keep receipts of all purchases made, or records on money spent, for the benefit of their children. Our courts do not base their awards on the guesswork of litigants. *See Wilson v. Begay,* 6 Nav. R. 1 (1988); *Hall v. Arthur*, 3 Nav. R.

35 (1980). As an example, in this case the total past expenses for Ranee range anywhere from $13,000.00 to $16,360.00. Descheenie's testimony at trial on past child support expenses for Ranee was confused and contradictory. Confused and contradictory evidence will only lead a district court to speculate on an award, especially where the number of years for which back support is requested is large.

Third, economic conditions in the Navajo Nation also influenced our decision not to allow past support in paternity actions. Many of our people are jobless, and statistics have shown that the per capita income for Navajo people living within the Navajo Nation is less than $4,000.00 per year. A court cannot award a custodial parent past child support for ten years, or even for three years, and expect the non-custodial parent to be able to pay off the balance. The monthly award for present and future support will be enough of a financial commitment for a parent to handle. A Navajo parent ordered to pay past support of $15,000.00 will be cast into huge financial debt.

No parent will be expected to pay 100% of a child's expenses. However, if a parent wants the child's other parent to take responsibility for a portion of the child's support, that parent must file an action for paternity and support as soon as possible after the child's birth. In this manner the child will be assured support from an early age. Petitions for paternity and child support cases, like all other lawsuits, take many months and sometimes years to be fully resolved.

Our holding that past support cannot be awarded in a paternity action will not affect in any way cases involving arrearages due from non-custodial parents who have disobeyed court orders to pay monthly support amounts. We note that a custodial parent who intends to collect on a past due court ordered support amount, like the unwed mother seeking child support, should initiate a lawsuit as soon as possible to avoid large arrearages. In this way, neither party will suffer irreparable financial difficulty.

The request for past child support in this paternity action is denied. The issue of current child support is remanded to the district court for a new trial to determine an appropriate amount using the formula set forth above.